HARRISONVILLE (BONHAM v.). See Case No. 1,629.

HARROLD (BYRD v.). See Case No. 2,269.

## Case No. 6,147.

### The HARRY.

[9 Ben. 524.] [1]

District Court, E. D. New York. May, 1878.

COLLISION ON RARITAN RIVER—LIGHTS—EVIDENCE.

When at the trial the witnesses for one of two colliding vessels testified that the bowlight of their vessel was burning, and on the day after the hearing of the cause the owners of the vessel caused the court to be informed, by their advocate in open court, that although the light was burning it was covered with a tarpaulin at the time of the collision, *held*, that such a statement, made under such circumstances, though forming no part of the evidence given at the trial, must be regarded as an admission given in the cause, of the fact so stated.

Two tugs, the Harry and the May-Flower, each with a coal-boat in tow alongside, encountered one another at night on the Raritan river, and a collision ensued, whereby a "chunker" towed by the May-Flower was instantly sunk with her cargo. The master of the chunker libelled both tugs for the loss of his boat, the coal on board, and his personal effects.

Henry T. Wing, for libellant.
Beebe, Wilcox & Hobbs, for the Harry.
Man & Parsons, for the May-Flower.

BENEDICT, District Judge. The collision out of which this controversy has arisen was plainly caused by the erroneous opinion formed by the pilot of the May-Flower, as he approached the Harry and her tow, that he was approaching a tow either at anchor,

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

or going in the same direction with the May-Flower. If the pilot of the May-Flower was justified by the facts in forming that opinion, no fault was committed in shaping his course to pass to port instead of starboard of the Harry, as he had the right in such a reach of the river to choose either method of passing a tow, at anchor, or moving in the same direction he was.

The pilot's opinion was justified by the facts if the Harry omitted to display the lights prescribed to be displayed by moving vessels, and the decisive question of the case therefore is the question of fact whether the Harry, as she approached the May-Flower, was displaying the proper lights to indicate that she was an approaching vessel.

The evidence as to the lights on the Harry is conflicting. There is positive evidence from those on board the Harry that her side and bowlights were set and burning, but the credit of those witnesses is impaired by the circumstance that when upon the stand they omitted to disclose the fact that their bowlight, although burning, was at the time covered with a tarpaulin. When the evidence was closed the testimony of those on board the Harry was calculated to convey to the court the idea that the bowlight of the Harry was not only burning, but visible to approaching vessels, whereas, as matter of fact, it was not then visible at all, having been covered from sight.

The fact that the head-light of the Harry had been so covered, was stated to the court, by the advocate for the Harry, in open court, upon the day after the hearing of the cause and, as was declared, the statement was made to the court by direction of the owners of the Harry. A statement so made, although forming no part of the evidence, when made under such circumstances must be regarded as an admission in the cause, and it has been so considered.

Looking then to the facts stated by the respective witnesses and the credit to which their respective statements are entitled, the weight of the evidence appears to be in favor of the conclusion that the proper lights were not displayed on the Harry. The only lights she displayed were the two vertical lights, but these lights would not in the absence of the side and bowlights show an approaching vessel that she was a tow in motion; on the contrary, under the circumstances, and in the absence of other lights they were calculated to create the erroneous opinion formed by the pilot of the May-Flower when he saw them that the tow was at anchor, or going the same way, and must render the Harry responsible for the accident that resulted therefrom.

The decree will, therefore, be that the libel be dismissed with costs as against the May-Flower, and that the libellant recover as against the Harry the amount of the damages sustained by reason of the collision mentioned in the pleadings.